[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 18, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-14481
Non-Argument Calendar

_____

D. C. Docket No. 06-00483-CR-1-WSD-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTHONY G. CHRISTOU,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 18, 2009)

Before CARNES, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Anthony Christou appeals his convictions for wire fraud, under 18 U.S.C.

§ 1343, and money laundering, under 18 U.S.C. § 1957(j). He makes three contentions. First, he contends that the district court abused its discretion by excluding a chart prepared by his accountant that showed the annualized rates of the relevant short-term loans he made. Second, he contends that the court erred in its jury instruction regarding "good faith" as a defense to fraud. Third, he contends that the court erred by not instructing the jury that fraud requires proof that he intended to create a scheme reasonably calculated to deceive persons of ordinary prudence and comprehension.

## I.

Christou's convictions are based on misrepresentations that he made regarding short-term loans he received from several investors. Nine of those investors testified at trial. They testified that they loaned money to Christou based on his representation that it would be used to finance "bridge loans" with several "high net worth individuals" he knew. Christou told the investors that those high-net-worth individuals wanted the bridge loans in order to make improvements to newly purchased homes while they were in the process of selling their old homes. In return, Christou gave each investor a promissory note that detailed the terms of the loan, including the time frame and the interest rate. The terms varied, but in general the loans were short term—for several weeks or a few months—and the

2

annualized rate of return appeared lucrative, ranging from 80% to 162%. Christou paid out the interest on the loans, but when the principal came due, he encouraged the investors to "roll over" the principal into another loan.

Christou never made any bridge loans to anyone. Nor did he ever intend to. Instead, he ran a Ponzi scheme, using the money from new investors to cover the interest payments due to earlier ones—in his words "[b]orrowing from Peter to pay Paul." Christou also used the loans to pay off his debts at several casinos throughout the United States.

By 2006, the scheme became unsustainable. Christou stopped making interest payments on the loans, informed his investors that he could not repay the principal, and filed for bankruptcy. In his bankruptcy petition, Christou listed $35 million in unsecured claims against him, and a majority of those claims involved the promissory notes related to his Ponzi scheme.

## II.

## A.

Christou sought to introduce at trial a chart that extrapolated the annualized interest rates for the short-term loans he received. The district court excluded the chart. We review a district court's evidentiary rulings only for abuse of discretion. United States v. Dohan, 508 F.3d 989, 993 (11th Cir. 2007).

Christou argues that the chart was relevant because it helped demonstrate that the investors knew the loans were risky based on the high annualized interest rates. Relevant evidence may be excluded, however, if it would be a waste of time or would be cumulative. See Fed. R. Evid. 403; Dohan, 508 F.3d at 991. In Dohan the defendant sought to introduce a chart that compared his relative profits from a Ponzi scheme to those of a co-conspirator. Id. at 991. We held that the district court did not abuse its discretion in excluding the chart under Rule 403, concluding that "[d]efense counsel was free to compare the relative profits in his closing argument based on other admitted evidence, without the benefit of the excluded chart." Id. at 993

The same rationale applies here. The terms of the loans at issue, including the high interest rates, were all in evidence. Christou was free to argue to the jury that those high interest rates demonstrated to the investors that the loans were risky. He was free to argue that the investors gave him the money because of the promise of huge returns and not because of any misrepresentations or fraud. Further, the witnesses' testimony about those rates was not so voluminous as to require a chart to summarize it. See Fed. R. Evid. 1006. Christou's counsel could rely on the admitted evidence and had no need for the chart in order to present his defense. The chart would have been cumulative evidence. The district court did

4

not abuse its discretion by excluding it.

**B.**

Christou next contends that the district court erred in its jury instruction regarding good faith as a defense to fraud. The district court chose to use only the first paragraph of this circuit's pattern instruction on good faith. Christou argues that the district court was required to include all three paragraphs.

Because Christou failed to object to the district court's instruction, our review is for plain error only. See United States v. Sirang, 70 F.3d 588, 594 (11th Cir. 1995). To demonstrate plain error, a defendant "must show that: (1) an error occurred; (2) the error was plain; (3) it affected his substantial rights; and (4) it seriously affected the fairness of the judicial proceedings." United States v. Gresham, 325 F.3d 1262, 1265 (11th Cir. 2003).

Christou has not established plain error because there was no error at all. The omitted paragraphs of the pattern jury instruction concern honest mistakes in judgment and mere careless errors and state that those circumstances do not constitute fraudulent intent. Christou was not entitled to that instruction because it is undisputed that he never intended to make the bridge loans. He did not make an honest mistake when he said he would use the money for bridge loans and then used it instead to pay his personal debts and fuel a Ponzi scheme. The district

5

court's instruction accurately expressed the applicable law and stated that the government had the burden to establish beyond a reasonable doubt that Christou acted with specific intent to defraud. The jury instruction properly guided the jury in its deliberations. See United States v. Puche, 350 F.3d 1137, 1148 (11th Cir. 2003).

## C.

Christou's final contention also involves the jury instructions. He contends that the district court erred in not instructing the jury that the government was required to prove beyond a reasonable doubt that he intended to create a scheme reasonably calculated to deceive persons of ordinary prudence and comprehension. Because he also failed to raise this objection at trial, we again review only for plain error. See Sirang, 70 F.3d at 594.

Christou argues that the district court's instruction ran afoul of United States v. Brown, 79 F.3d 1550 (11th Cir. 1996), which held that mail fraud requires a scheme reasonably calculated to deceive persons of ordinary prudence. That argument is derailed at the station because Brown, to the extent it would apply, is no longer good law in this circuit. See United States v. Svete, 556 F.3d 1157 (11th Cir. 2009) (en banc) (overruling Brown and holding that the offense of mail fraud does not require proof of a scheme calculated to deceive a person of ordinary

6

prudence).

**AFFIRMED.**